## Case No. 10,220.

### The NIAGARA.

[3 Blatchf. 37:[1] 29 Hunt. Mer. Mag. 719.]

Circuit Court, S. D. New York. Sept., 1853.

COLLISION—BETWEEN STEAMERS—FAILURE TO PORT HELM—USAGE.

1. Where a steamboat going up the East river, above Corlear's Hook, on the New York side, met another steamboat coming down, and the latter ported her helm to pass on the right, but the former starboarded her helm to pass on the left, and a collision between the two ensued, and it appeared that, if the former had ported her helm, there would have been no collision: *Held*, that the former was liable for the damages caused by the collision, on account of her failure to port her helm.

[Cited in The E. C. Scranton. Case No. 4,273; The Johnson v. McCord, 9 Wall. (76 U. S.) 154.]

2. In this case it was set up by the former vessel, as an excuse for not porting her helm, that it was a custom, in navigating that part of the river, for vessels coming down in an ebb-tide to keep off in the middle of the river and in the flue tide, and give to vessels going up the benefit of the eddies and slack water on the New York shore, but the evidence failed to establish any such custom.

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

[Appeal from the district court of the United States for the Southern district of New York.]

This was a libel in rem, for collision, filed by John Van Pelt, in the district court, against the steamboat Niagara, to recover for damage done by that vessel to the steamboat Cleopatra. The district court decreed for the libellant. and the claimants appealed to this court. [Case unreported.]

Luther R. Marsh and Oscar W. Sturtevant, for libellant.

Alexander Hamilton. Jr., and Washington Q. Morton, for claimants.

NELSON, Circuit Justice. This is a libel for a collision, filed by the owner of the steamboat Cleopatra against the steamboat Niagara. The collision took place in the East river, opposite Cherry street. The Cleopatra was coming down the river on the New York side, with passengers, on her trip from Norwich to New York, at about half-past seven o'clock on the morning of the 30th of December, 1847. The Niagara had left her berth in the city that morning. With passengers, for Bridgeport, had rounded Corlear's Hook, and was straightening up the river. also on the New York side, when the collision occurred. It was a clear morning, and there was abundance of room for the vessels to pass each other without danger. It is quite apparent, therefore. that there was gross fault in the navigation of one or the other or both vessels, or the collision need not have occurred. The Cleopatra was struck on her larboard side, some one hundred feet from her bow, by the Niagara, the blow being a glancing one. It is clear, upon the evidence, that the Cleopatra, at the time she first descried the Niagara. as the latter was rounding the Hook. ported her helm to pass on the right, and that. if the Niagara had ported hers. as was her duty, according to the established general rule. both vessels would have passed free. They were from four to five hundred yards from each other when the Niagara opened on rounding the Hook, and each vessel could be seen; and, of course, in sufficient time for each to have made the proper manoeuvre to pass to the right. But the Niagara, instead of porting. starboarded her helm, to pass inside of the other vessel. This is, in the answer, claimed as a right, founded upon the custom and usage of vessels navigating this stretch of the river—that vessels coming down in an ebb-tide are bound to keep off in the middle of the river and in the true tide, giving to vessels going up the benefit of the eddies and slack water on the New York shore. The evidence in the case fails to establish any such custom. The error of the Niagara, no doubt, led to the collision.

The steamboat Traveller had left her berth that morning on her trip up the Sound, and was ahead of the Niagara, on the New York side, some five or six hundred yards. She was hugging the shore, and passed the Cleopatra on the inside. Some witnesses have been examined in this court, on the part of the Niagara, for the purpose of establishing that the Cleopatra was in fault in porting her helm after she passed the Traveller, as the Niagara was then in the wake of that vessel. and so far in shore that there was not time for her to change her course to the right to avoid the collision. But, upon a careful examination of this evidence, I am not satisfied that the position taken can be maintained. The weight of the whole evidence in the case is, that the Traveller was close in shore at the time she passed the Cleopatra, and that she had sheered in before meeting her, for the purpose of getting on the inside; and further, that, as soon as she passed, the Cleopatra ported her helm, to take the right of the Niagara, crossing the stern of the Traveller as she inclined nearer to the shore. This brought the Cleopatra on a line with the course of the Niagara, and indicated to the latter at the time that the Cleopatra intended passing her on the right; and this in season for her to have ported her helm, as was her duty, according to the established nautical rule.

In order to establish fault in the direction thus taken by the Cleopatra, it must appear to the satisfaction of the court that the Niagara, at the time, was so far west of the Cleopatra, and within so short a distance of her, as the two vessels were approaching each other, that there would not have been time for the Niagara to port her helm and pass to the right without danger of a collision. Under such circumstances, the Cleopatra would not have been justified in persevering to pass on the right. The evidence, in my judgment, warrants no such conclusion. It is apparent that the Niagara persevered in her supposed right to pass up the western or New York side of the river, after her pilot saw the direction of the Cleopatra. until it was too late to correct the error; and that the management of the Niagara. under this mistaken view of her right, led to the catastrophe. [The testimony of the captain of the Niagara was offered in evidence on the part of the appellees in this court, and was objected to on the ground of interest. He was part owner of the vessel, appeared as claimant. and put in the answer. He has since assigned his interest, and been released from all contribution by his associates. and indemnified against any damages and costs that may be recovered. I have not looked into the question, as in my judgment his testimony would not change the result.] [2]

I am satisfied that the decree of the court below is right and should be affirmed.

[2] [From 29 Hunt. Mer. Mag. 719.]